(No. 5135—)

BALYS POSKUS, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed April 20, 1967.*

EDWIN W. SALE, Attorney for Claimant.

WILLIAM G. CLARK, Attorney General; LEE D. MARTIN, Assistant Attorney General, for Respondent.

PERLIN, C.J.

Claimant, Dr. Balys Poskus, seeks recovery of $1,812.25 allegedly owed to him by respondent for services rendered as a physician at the Kankakee State Hospital for the period beginning July 1, 1961 and ending June 30, 1963.

Dr. Poskus testified as follows:

That he was employed at the Kankakee State Hospital, Kankakee, Illinois, as a half-time physician, and was classified as a Physician V. His employment commenced on or about July 22, 1957, and he went on half-time status about September 1, 1958. The pay scale for a half-time physician was based upon that of a full-time physician, i.e., a half-time physician was to receive one-half of the base pay of a full-time physician. Until July 1, 1961, the base pay for a full-time physician was $977.00 per month, and on that date it was increased to $1,015.00 per month. On January 16, 1962, the base pay was again increased to $1,170.00 per month. Despite the pay increases, Dr. Poskus continued to receive one-half of the base pay of a full-time physician at the rate of $977.00. He questioned his superiors during this time as to why he was not getting the increased pay, but was told only that half-time doctors were not entitled to the raises. Respondent introduced no testimony.

The Report from the Department of Mental Health, signed by Gabriel Misevic, M.D., Superintendent of the Kankakee State Hospital, reveals the undisputed facts in the following excerpts:

"Dr. Poskus is a physician authorized to practice medicine in the State of Illinois, License No. 31309. He was re-employed with the Department of Mental Health, State of Illinois, Kankakee State Hospital, on July 24, 1957. On September 1, 1958, he was reassigned as a part-time physician at a salary rate of $488.50.

"The DPW 1108 reflects Dr. Poskus' part-time salary on July 1, 1961 as $507.50. The $507.50 rate continued until January 15, 1962. Then, on January 16, 1962, the rate was increased to $585.00.

"Payroll voucher records in this office indicate that Dr. Poskus was paid at the rate of $488.50 from July 1, 1961 through June 30, 1963.

"Records in this office indicate that Dr. Poskus was underpaid $1,812.25.

"Records indicate Dr. Poskus has a just claim with the State of Illinois in the amount of $1,812.25."

Claimant has also submitted a letter, which was received by him from Harold M. Visotsky, M.D., Director of the Department of Mental Health, dated October 11, 1963, which reads in part as follows:

"We regret that we did make an error, and that you are correct in that the total gross salary underpayment for the period of July 1, 1961 to June 30, 1963 is $1,812.25."

Respondent contends that claimant is barred from asserting his claim when he received and accepted lesser pay. Respondent further alleges that the following constitutional and statutory provisions proscribe the payment to claimant of any amount:

"The General Assembly shall never grant or authorize extra compensation, fee or allowance to any public officer, agent, servant or contractor after service has been rendered or a contract made, nor authorize the payment of any claim, or part thereof, hereafter created against the State under any agreement or contract made without express authority of law; and all such unauthorized agreements or contracts shall be null and void;" (Illinois Constitution, Article IV, Sec. 19.)

"Amounts paid from appropriations for personal services of any officer or employee of the State, either temporary or regular, shall be considered as full payment for all services rendered between the dates specified in the payroll or other voucher, and no additional sum shall be paid to such officer or employee from any lump sum appropriation, appropriation for extra help or other purpose, or any accumulated balances in specific appropriations, which payments would constitute in fact an additional payment for work already performed, and for which remuneration had already been made." (Par. 145 (3), Chap. 127, Ill. Rev. Stats.)

This Court has applied the foregoing provisions in a long line of cases, none of which present the same fact situation as found in the instant case. The rationale running through all the cases on which respondent relies is expressed as follows:

"A claimant cannot accept salary warrants purporting to cover

the full amount due him for services during stated periods, and thereafter, when his active service has ended, obtain an award from the State for an additional amount for those periods for which he had apparently been paid for services in full." (*Agsten, et al* vs. *State of Illinois*, 13 C.C.R. 8; *Mills* vs. *State of Illinois*, 9 C.C.R. 69; *Clayton* vs. *State of Illinois*, 21 C.C.R. 321.)

Nowhere is it contended that claimant is requesting additional compensation for services performed, or that he has performed extra services. He is not asking payment for more than was appropriated, or for more than his contract of employment specifically provided, i.e., half the salary of a full-time physician. Because the contract of work was in a definite amount, and the sum paid to him by respondent was admittedly below this amount, it cannot be contended that he was "apparently paid for services in full". Respondent's agents have clearly established that the sole reason for the nonpayment of the requested amount was a mistake. They have further established that claimant was entitled to the sum of $1,812.25, which would have been paid to him but for respondent's mistake. Respondent cannot profit from its own errors.

Accordingly, claimant is hereby awarded the sum of $1,812.25.